[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13835
Non-Argument Calendar

_____

D.C. Docket No. 3:18-cv-01516-TKW-GRJ

VALINDA PHILLIPS,

Plaintiff-Appellant,

versus

SURFSIDE VENTURES INC,
d.b.a. The Crab Trap,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(July 20, 2020)

Before WILSON, ANDERSON, and ED CARNES, Circuit Judges.

PER CURIAM:

Valinda Phillips slipped and fell inside a restaurant operated by Surfside Ventures, Inc., d.b.a. The Crab Trap (The Crab Trap).  The district court granted summary judgment to The Crab Trap on Phillips' negligence claims, concluding that she had failed to show a genuine issue of material fact that the restaurant had actual or constructive knowledge of the dangerous condition.  This is Phillips' appeal.

I.

The facts in the summary judgment record are as follows.  Phillips and her husband, residents of Oklahoma, visited The Crab Trap in Fort Walton Beach, Florida while on vacation.  As they followed a hostess to their table, Phillips approached a set of two steps inside the restaurant, and before descending, she looked down.  The first step was painted bright yellow and had two slip guards, and at the base of the step was the hardwood floor.  There were handrails on both sides of the steps.  Phillips saw nothing out of the ordinary.  But when she placed her foot on the first step, it felt like she had "stepped on ice."  She slipped and landed on the floor, breaking her ankle.  Phillips did not know what substance she had slipped on, only that "there had to be something." A first responder who arrived later told Phillips that humidity could make the floor slick.  Phillips had "no idea" how long the substance had been on the step.  Within 10 minutes of

2

Phillips' fall, a server almost fell on the step.  During the 30 to 45 minutes from the time of her fall to the time she left in an ambulance, no employee at the restaurant inspected the step.

The record shows that, although there is no written inspection policy, employees of The Crab Trap are required to regularly inspect the floors throughout their shifts and assist with cleaning any spills.  There were no reported incidents or complaints involving the steps or surrounding area before or after Phillips' fall.

Phillips filed a negligence action alleging that The Crab Trap failed to (1) maintain the premises in a reasonably safe manner, (2) warn her of the dangerous condition, (3) correct the condition, and (4) properly educate and supervise its employees concerning the steps which were inherently dangerous. She retained an expert, Scott Lindvall, who pointed to The Crab Trap's website, advertising that the restaurant is "steps away from the beach" and customers are encouraged to come as they are: "no shirt, no shoes, no problems."  In light of that, Lindvall opined, The Crab Trap should have warned customers of the "potential" that the steps could be wet, should have covered the whole first step with slip guards, and should have constructed a middle rail in addition to the ones on both sides of the steps.  He also opined that there was "a possibility" that the steps "could have been affected by the humidity" and become slippery.

3

The Crab Trap moved for summary judgment, contending that there was no evidence that it had actual or constructive knowledge of any substance on the step. It argued that Phillips had not seen anything on the step either before or after her fall and only speculated that the step was slippery due to the humidity. It also challenged Lindvall's opinion as based on unreasonable inferences, particularly because he had never even visited The Crab Trap.

The district court granted the motion, concluding that there was no evidence that The Crab Trap had actual knowledge that the steps presented a dangerous condition. Considering constructive knowledge, the court determined that there was no evidence as to how long the substance had been on the step. Nor was there evidence from which the length of time could be inferred. The court also determined that there was no evidence that the condition that had caused Phillips' fall occurred with regularity, such that The Crab Trap should have known about it. Lindvall's expert opinion did not alter the court's determination because it was unsupported by any evidence and would require an "impermissible stacking of inferences to find that it was foreseeable that the step on which [Phillips] slipped was regularly wet simply because the restaurant was 'steps away from the beach' and encouraged its patrons to dine with 'no shirt [and] no shoes.'"

II.

4

We review de novo a district court's grant of summary judgment. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999). Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine dispute as to any material fact and compels judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 16 S. Ct. 2548 (1986). "In determining the relevant set of facts at the summary judgment stage, we must view all evidence and make any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party. However, we draw these inferences only to the extent supportable by the record." Penley v. Eslinger, 605 F. 3d 843, 848 (11th Cir. 2010) (citation and quotation marks omitted); see also Raney v. Vinson Guard Serv., Inc., 120 F. 3d 1192, 1198 (11th Cir. 1997) ("Summary judgment cannot be avoided. . . based on hunches unsupported with significant probative evidence.").

Phillips' negligence claims arise under Florida law, which is the substantive law that we apply in this diversity case. Pendergast v. Sprint Nextel Corp., 592 F.3d 1119, 1132–33 (11th Cir. 2010). In Florida, a plaintiff bringing negligence claims based upon "a transitory foreign substance" on the floor of a business "must prove that the business establishment had actual or constructive knowledge of the dangerous condition and should have taken action to remedy it." Fla. Stat. § 768.0755(1); see also Pembroke Lakes Mall, Ltd. v. McGruder, 137 So. 3d 418,

423–26 (Fla. 4th DCA 2014) (discussing the additional element of actual or constructive knowledge that § 768.0755 imposes on slip-and-fall plaintiffs). Actual knowledge of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition. Barbour v. Brinker Fla., Inc., 801 So. 2d 953, 957 (Fla. 5th DCA 2001). Where there is no evidence that the defendant had actual knowledge of the dangerous condition, the plaintiff may prove the defendant's constructive knowledge with circumstantial evidence showing that "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition" or that "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(a)–(b).

It is undisputed that The Crab Trap had no actual knowledge of the substance on the step on which Phillips slipped. To survive summary judgment, Phillips had to show a genuine issue of material fact about The Crab Trap's constructive knowledge of the dangerous condition. She failed to do that.

First, Phillips has failed to show that "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition." Fla. Stat. § 768.0755(1)(a). Phillips testified that she looked down at the step before placing her foot on it and did not see any substance there. She testified that "there had to be something" on

the step to cause her to fall, but she did not know what it was or how long it had been there. The Crab Trap required employees to regularly inspect the floors throughout their shift and there is no evidence in the record that they did not do so. Cf. Delgado v. Laundromax, Inc., 65 So. 3d 1087, 1090 (Fla. 3d DCA 2011) (explaining that "the mere presence of water on the floor is not enough to establish constructive notice").

Second, Phillips has failed to show that the "condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(b). The record shows that no falls had occurred on the steps or surrounding area before or after Phillips' fall. Although a server "almost" fell on the step shortly after Phillips fell, there is no evidence that a substance on the step is what caused that slip. Phillips' own testimony shows that the server's misstep may have been caused by distraction instead of by something slippery on the steps. (See Doc 17-1 at 45–46) (stating that the person who slipped "was talking to the waitress that was there with me . . . [a]nd then she took her step, and she went backwards").

And Lindvall's opinions that The Crab Trap's proximity to the beach created the "potential" for wet floors or the "possibility" that humidity could make the steps slippery are insufficient to show that the conditions leading to Phillips' fall were foreseeable, because they are based on "hunches" unsupported by any probative evidence. See Raney, 120 F.3d at 1198. Because there is no genuine

issue of material fact about The Crab Trap not having actual or constructive notice, the district court properly granted summary judgment in its favor.

**AFFIRMED.**